VYO LYNN, APPELLEE, V. BERTHA LYNN, APPELLANT.

4 N. W. (2d) 561

FILED JUNE 12, 1942. No. 31340.

*E. D. O'Sullivan, McKenzie & Dugan* and *Edward J. Peterson*, for appellant.

*G. H. Seig* and *Frank C. Heinisch, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

This is a divorce action in which no objection is made by either party to the decree of divorce, but the wife appeals. from an allowance of only $240 as alimony, together with attorney's fees and costs.

The amended petition, filed June 24, 1940, alleged that

Vyo Lynn, plaintiff, and Bertha Lynn, defendant, were married May 11, 1935, at Tekamah, Nebraska, and have resided in Omaha ever since said marriage; that plaintiff has conducted himself properly in all respects toward defendant, but that defendant has been guilty of extreme cruelty toward plaintiff, and has caused the marriage relation existing between them to become unbearable and impossible. It is further alleged that on February 20, 1937, plaintiff filed a petition for divorce; that on March 1, 1937, defendant filed an answer and cross-petition, and that on April 2, 1937, hearing was had and defendant's cross-petition was dismissed, and an absolute divorce was granted to plaintiff.

The amended petition further stated that thereafter plaintiff and defendant were reconciled and resumed marital relations upon the oral promises of defendant that she would conduct herself toward the plaintiff as a kind, loving and dutiful wife, and that defendant filed a petition to set aside the decree of divorce, and a hearing was had, and the decree was vacated and set aside. It is charged that defendant effected such reconciliation through fraud and deceit upon plaintiff, in that within three days afterward defendant refused to live with plaintiff, and pursued a course of cruel and inhuman treatment toward plaintiff, and plaintiff prays for a decree of absolute divorce.

On January 3, 1941, defendant filed answer and cross-petition, alleging various acts of extreme cruelty, in which plaintiff threatened defendant with bodily injury and threatened her life; that ever since they resumed marital relations plaintiff has refused to support her, and has absented himself from home for months at a time. It is alleged that prior to the marriage of the parties plaintiff was the owner of certain real estate, amounting to 32.48 acres, in Douglas county, and that defendant owned certain lots in Florence, now a part of the city of Omaha; that defendant had owned another lot in Florence, and had sold same for $1,700, which she had used for her support and maintenance and for the partial support and maintenance of plaintiff, and for the purpose of improving the property

owned by herself and plaintiff. It is further alleged that on March 7, 1936, the parties by a reconveyance arrangement became joint tenants of their real properties with the right of survivorship, and not tenants in common; that the aforementioned real estate belonging to plaintiff prior to their marriage consisted of a farm near the Municipal Airport, which land has become very valuable, but was encumbered with a mortgage of $1,350; that during the married life of the parties they have made various improvements on said farm which have enhanced its value. Defendant asks for suitable alimony, and that both parties be required to convey to each other their respective interests in the real estate, and for other relief.

On January 31, 1941, plaintiff filed reply, alleging that he is employed as a truck driver, earning approximately $20 a week. He denies that improvements have been made on his farm of 32.48 acres which have enhanced its value; denies that at the time of their marriage defendant had $1,700, and alleges that she had an income from the property owned by her to the extent of $30 a month. Plaintiff alleges that in the spring of 1938, after the parties had become reconciled, the defendant sold a piece of property owned by her for $600, and used said sum to purchase insurance for herself and for her own personal benefit, and not for the benefit of plaintiff, nor for the purpose of improving any property owned by him. Plaintiff prays that defendant's cross-petition be dismissed, that plaintiff be given absolutely the real estate owned by him previous to the marriage, and that defendant be required to make the necessary conveyances.

The decree, entered May 8, 1941, found that the defendant had conducted herself properly towards the plaintiff, but that plaintiff had been guilty of extreme cruelty toward defendant, making their married life intolerable; that the parties at the time of the marriage were possessed of the real estate heretofore mentioned; that defendant had sold a lot in Florence on a land contract, and that the balance of the purchase price on said realty, in the sum of $610, was paid to defendant and expended by her during the married

life of the parties. It was decreed that an absolute divorce be granted to defendant, and that she should recover permanent alimony in the sum of $240, to be paid at the rate of $5 a week, without interest; that the parties should receive back their separate pieces of real estate owned by them before the marriage.

Neither attorney Edward J. Peterson for defendant nor attorney G. H. Seig for the plaintiff, who argued the case in this court, had appeared for the parties before this appeal.

The bill of exceptions shows that the plaintiff is a truck driver, and has been employed by the Engles Lumber Company for more than 15 years, and at the time of trial was receiving wages of $20 a week. It further shows that when they were married on May 11, 1935, at Tekamah, Nebraska, the husband was 53 years of age, and this was his first marriage, and she was 48 years of age, and had been married four times previous to this marriage. At the time they each owned some real estate. He owned some bottom, or river, land, to which there had been some accretion. In April, 1931, he had purchased of the state board of educational lands this 32.48-acre tract in East Omaha under a contract, and paid $450 down and was to pay $1,800, but in the ten years he had never been able to pay anything more on the principal, and still owes $1,350 on the principal, but has paid the interest, and has paid the taxes. There is danger that his contract will be canceled unless he pays immediately one-tenth of the amount in default, to wit, $135. While there have been some accretions, yet he could not sell it, for the title is not merchantable, as he only has a contract of purchase. If the Omaha airport should be extended farther to the north, which there is no evidence that they have any intention of doing at the present time, the land might be of more value, but whatever value it has at the present time is small, except for this speculative feature.

In regard to the financial situation of the parties, the testimony discloses that plaintiff built a brick veneer garage on this river tract, size 24 by 24, and finally converted this

into a four-room house; that he built a woven-wire fence around the property, and cleared off about 12 acres of the brush on the north side and about five acres on the south side; that these improvements were all made before he met the defendant.

The defendant owned two pieces of real estate in Omaha, one of which she sold on a contract before the marriage, and from the other she received rent of $30 a month, all of which the plaintiff claims she spent on herself, which she denies, and says she spent part of it on this acreage. She has two children by a former marriage who are adults. The defendant also spent some of her money on fortune tellers, who predicted an early death for the plaintiff, and she spent part of it on premiums on a $3,500 life insurance policy which the defendant took out on the life of the plaintiff against his wishes.

They only lived together about half of the time that they were married, as they almost continually quarreled, and the rest of the time he would sleep on a cot in the lumber yard where he worked. The defendant moved back into his place after the first divorce was granted, and rented out his land on shares, raised hogs and chickens, and supported herself after he left. She also received $7 a week board from a roomer who stayed there nearly two years. This roomer testified that he took the defendant to spiritualists and readers on many occasions, and heard her tell her husband that these readers had told her that he was going to die.

Much of the testimony in the case about their quarrels relates to events which occurred prior to the entry of the first decree of divorce, and in *Sutherland v. Sutherland*, 132 Neb. 558, 272 N. W. 549, it was held that testimony relating to such events antedating the original decree could not be considered by this court.

In this last decree of divorce, the defendant wife received the decree of divorce on her cross-petition, and alimony of $240, to be paid at the rate of $5 a week, and in addition she received certain household goods; in addition, she was given

certain poultry, rabbits, and live stock which she was raising on his place; then there were certain outstanding bills, all of which the plaintiff was required to pay. It also directed that the plaintiff should also pay to her all the temporary alimony allowances previously ordered to be paid to her by the court, and, in addition, that the plaintiff should pay her attorney, E. D. O'Sullivan, the sum of $150 as additional attorney's fees, and that the defendant should receive as her own separate property the real estate which she had owned, and which is described in the decree; that, in addition, the plaintiff should pay all of the costs of the action, including a $10 expert witness fee to O. L. Crumbliss and the same amount to Emil B. Hakel, real estate experts of the city of Omaha.

The records of this court show that on November 3, 1941, an order was made reading as follows: "On motion of appellant for allowance of temporary alimony, suit money and attorney fees, appellant allowed $20 docket fee; $5.25, cost of transcript; $125, cost of bill of exceptions; $35, for cost of briefs; $50, attorney fee; otherwise denied. All payments to be made to clerk district court by November 15, 1941;" said costs amounting to the sum of $235.25.

It is urged that the trial court was without authority to vacate the divorce decree, and that its order on February 25, 1938, was void. There is nothing in the record which indicates the grounds for its vacation. With the record in this condition, the presumption is that the order vacating the decree was valid. We must, therefore, in the consideration of this case, treat the order vacating the divorce decree as binding.

After a careful consideration of the pleadings and the evidence in this case, the decree of the district court and the alimony allowed therein, together with additional payments and the several allowances made in this court as hereinabove set out, are deemed sufficient, and that the defendant is not entitled to additional attorney's fees or alimony, and the decree entered by the district court is hereby affirmed, with all costs taxed to plaintiff.

AFFIRMED.

SIMMONS, C. J., dissenting.

The plaintiff appellee presents a question in this case which the majority opinion does not answer.

This record shows that the parties were married May 11, 1935. On April 2, 1937, the husband obtained a default divorce decree against the wife, a property settlement having been made. The parties went back to living together in November, 1937. January 22, 1938, the wife made application to set aside the divorce decree. Notice was served upon the husband. He did not appear. It does not appear that fraud in securing the order of April, 1937, was charged. On February 25, 1938, the trial court signed an order setting aside the decree of April 2, 1937.

This information is gathered from the oral testimony. The pleadings and evidence taken at the hearing on February 25, 1938, are not in the record. The plaintiff, not questioning the validity of the order of February 25, 1938, instituted this action for divorce. The legality of the 1938 proceeding was not questioned in the trial court. It is presented for the first time here, by counsel who was not in the case in the trial court. May the question properly be presented on appeal where it was not raised in the trial court?

The plaintiff husband contends that by the provision of section 42-340, Comp. St. 1929, the decree of April 2, 1937, "became final" six months thereafter and that the order of February 25, 1938, was a nullity, that the parties were not remarried by that order or otherwise, and there being no remarriage, there can be no divorce.

The defendant wife contends that the provisions of sections 20-2001 and 20-2008, Comp. St. 1929, authorize the action taken by the trial court. Which contention is correct?

This is not an ordinary lawsuit. The state has an interest in the matter of marriage and divorce. These questions should not be ignored but should be answered before the question of modification or affirmance of the decree of the trial court is determined.